**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC SCHLEYER and EMILYN MISHKAN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>STARBUCKS CORPORATION,<br><br>        Defendant. | Case No. 22-cv-10932-JPO-SN<br><br>Hon. J. Paul Oetken, U.S.D.J.<br>Hon. Sarah Netburn, U.S.M.J. |

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS

---

**K&L GATES LLP**
Loly G. Tor
One Newark Center, 10th Fl.
Newark, New Jersey 07102
Tel: (973) 848-4026
loly.tor@klgates.com

Paul W. Sweeney, Jr.
(admitted *pro hac vice*)
10100 Santa Monica Blvd., 8th Fl.
Los Angeles, California 90067
Tel: (310) 552-5000
paul.sweeney@klgates.com

Pallavi Mehta Wahi
(admitted *pro hac vice*)
Shelby R. Stoner (admitted *pro hac vice*)
925 Fourth Avenue, Ste. 2900
Seattle, WA 98104
Tel: (206) 623-7580
pallavi.wahi@klgates.com
shelby.stoner@klgates.com

*Attorneys for Defendant Starbucks Corporation*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    ALLEGATIONS IN PLAINTIFFS' CLASS ACTION COMPLAINT ............................ 2

III.   ARGUMENT ........................................................................................................ 5

    A.    Rule 12(b)(6) Standard ................................................................................ 5

    B.    Plaintiffs Fail to Plausibly Plead Claims under New York Law. .......................... 6

        1.    The claims brought under New York General Business Law §§ 349 and 350 fail as a matter of law ................................................................................. 6

            i.    *The allegations are insufficient to show that a reasonable consumer would be materially misled by the name "Sprouted Grain bagel."* ..... 7

                a.    *Plaintiffs concede that the Product contains at least four sprouted grain ingredients and therefore cannot be misleading as a matter of law* ............................................................................. 8

                b.    *Nothing in the complaint suggests Starbucks made any representations about the amount of sprouted grain in the Product or its nutritional benefits.* .............................................. 10

                c.    *Plaintiffs' reference to "sprouted" bagels sold in grocery stores only demonstrates the implausibility of their false-labeling theory.* ............................................................................ 11

                d.    *Plaintiffs fail to allege that any empirical evidence substantiates their assertions that the "Sprouted Grain" name is materially misleading* ...................................................................... 13

            ii.    *The allegations are insufficient to show that Plaintiffs suffered any damages from the purported deception by Starbucks* ....................... 14

        2.    The remaining New York claims, a statutory claim for breach of implied warranty and other common law claims, also fail as a matter of law ....... 15

    C.    Plaintiffs Fail to Plausibly Plead Claims under California Law .......................... 16

        1.    The CLRA, FAL, and UCL claims fail as a matter of law for failure to sufficiently plead that a reasonable consumer is likely to be deceived by any purported deception by Starbucks.................................................. 16

        2.    The remaining California claims, a statutory claim for breach of implied warranty and other common law claims, also fail as a matter of law ....... 19

    D.    Leave to Amend Would Be Futile. ................................................................. 20

    E.    Alternatively, the Court Should Strike Plaintiffs' Nationwide Class Allegations ............................................................................................... 22

IV.   CONCLUSION................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................5, 6, 13

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019) ............................................................................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................5

*Boswell v. Bimbo Bakeries, USA, Inc.,*
    No. 20-cv-8923-JMF, 2021 WL 5144552 (S.D.N.Y. Nov. 4, 2021).........................9

*Braynina v. TJX Cos., Inc.,*
    No. 15-cv-5897-KPF, 2016 WL 5374134 (S.D.N.Y. Sep. 26, 2016).....................14

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002) ............................................................................23

*Brown v. Kellogg Sales Co.,*
    No. 20-cv-7283-ALC, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022) ............................8, 10, 15

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.,*
    973 P.2d 527 (Cal. 1999) ....................................................................................16

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)................................................................................12

*Colgan v. Leatherman Tool Grp., Inc.,*
    38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006)..............................................................17

*Corsello v. Verizon N.Y., Inc.,*
    18 N.Y.3d 777 (2012) ........................................................................................16

*Cruz v. Anheuser-Busch, LLC,*
    No. 14-cv-6760-AB, 2015 WL 3561536 (C.D. Cal. June 3, 2015)........................19

*Cuoco v. Mortisugo,*
    222 F.3d 99 (2d Cir. 2000)..................................................................................20

*Dashnau v. Unilever Mfg. (US), Inc.,*
    529 F. Supp. 3d 235 (S.D.N.Y. 2021)................................................ *passim*

*Durell v. Sharp Healthcare*,
   108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010) ............................................................20

*Fid. & Guar. Life Ins. Co. v. Pina*,
   165 S.W.3d 416 (Tex. App. 2005) .........................................................................24

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ....................................................................6, 7, 21

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ...................................................................................15

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .....................................................................25

*Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
   18 N.Y.3d 722 (2012) ............................................................................................25

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (2002) ............................................................................................25

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) .......................................................................23, 24

*Hamidani v. Bimbo Bakehouse LLC*,
   No. 22-cv-1026, 2023 WL 167513 (N.D. Ill. Jan. 12, 2023) ..................................11

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-cv-4697-CM, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .................14, 15

*Kennedy v. Mondélez Glob. LLC*,
   No. 19-cv-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)......................8, 10, 11

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012) ..............................................................................................6

*Lavie v. Procter & Gamble Co.*,
   129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003) .....................................................16, 17

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018)........................................................................7, 8, 9, 10

*Martinez v. Mead Johnson & Co., LLC*,
   No. 22-cv-213-JWH-SHK, 2022 WL 15053334 (C.D. Cal. Oct. 22, 2022)............18

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) .............................................................................23, 25

*McLaughlin v. Am. Tobacco Corp.*,
   522 F.3d 215 (2d Cir. 2008)...........................................................................22

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)....................................................................6, 7, 14

*Oswego Laborers' Loc. 214 Pen. Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ...............................................................................7, 14

*Parent v. MillerCoors LLC*,
   No. 15-cv-1204-GPC-WVG, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015)...........................18

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...................................................................22, 23

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
   507 F.3d 117 (2d Cir. 2007).......................................................................6, 20

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
   No. 6-cv-6198-LAK-JCF, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008)...............................22

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) .................................................................................14

*Solak v. Hain Celestial Grp., Inc.*,
   No. 17-cv-704-LEK-DEP, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)...............................11

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ..............................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................22

*Wallace v. Wise Foods, Inc.*,
   No. 20-cv-6831-JPO, 2021 WL 3163599 (S.D.N.Y. July 26, 2021)...............................7, 9, 10

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) .............................................................17

**Statutes**

Ala. Code § 8-19-10.......................................................................................24

Cal. Bus. & Prof. Code § 17200 *et seq.* ..............................................................5, 16

Cal. Bus. & Prof. Code § 17500 *et seq.* ..............................................................5, 16

Cal. Civ. Code § 1750 *et seq.*...........................................................................5

Cal. Com. Code § 2314 .............................................................................................................5, 19

Ga. Code Ann. § 10-1-399 ..............................................................................................................24

La. Rev. Stat. § 51:1409 .................................................................................................................24

Miss. Code Ann. § 75-24-15 ...........................................................................................................24

N.Y. Gen. Bus. Law § 349 ......................................................................................................*passim*

N.Y. Gen. Bus. Law § 350 ......................................................................................................*passim*

N.Y. U.C.C. § 2-314 ..................................................................................................................5, 15

Va. Code Ann. § 59.1-204 ..............................................................................................................24

**Other Authorities**

21 C.F.R. § 101.4 ..............................................................................................................................8

Fed. R. Civ. P. 8 ................................................................................................................................5

Fed. R. Civ. P. 12(b) ...............................................................................................................*passim*

Fed. R. Civ. P. 12(f) ..................................................................................................................22, 25

Fed. R. Civ. P. 15 ............................................................................................................................20

Fed. R. Civ. P. 23 ......................................................................................................................22, 25

Fed. R. Evid. 201 .....................................................................................................................12, 20

# I.   INTRODUCTION

This class action rests upon the sole, and implausible, allegation that naming a bagel that contains multiple types of sprouted grains the "Sprouted Grain" bagel is somehow deceptive or misleading.  The complaint does *not* allege that Defendant Starbucks Corporation's ("Starbucks") "Sprouted Grain" bagel (the "Product") fails to contain "sprouted grain" ingredients.  To the contrary, the allegations concede that the Product contains a *variety* of sprouted grain ingredients.  However, according to Plaintiffs Eric Schleyer and Emilyn Mishkan, the Product does not contain *enough* sprouted grain to warrant the name.  Regardless of Plaintiffs' narrow interpretation of the Product name, when all of the facts alleged in the Complaint are considered, the implausibility of Plaintiffs' claim is glaringly revealed.

Rather than adequately allege that the Product's name, standing alone, could plausibly deceive or mislead a reasonable consumer under either New York or California law, the facts alleged in the complaint, unwittingly, *validate* the Product's name.  The complaint specifically alleges that the Product contains the following sprouted grain ingredients: Sprouted Whole Wheat Flour, Sprouted Wheat Grains, Sprouted Rye Grains, and Sprouted Triticale Grains.  No single ingredient appears more frequently in the Product's ingredients list than the various types of sprouted grains.  The Product's name simply describes the type of bagel being offered, just like the cinnamon raisin, everything, and plain bagels the Product is sold alongside, as shown in the complaint.  Nor does the complaint allege that Starbucks did anything other than *name* the Product. There are no allegations, for example, that Starbucks made any specific representations regarding the amount of sprouted grain in the Product, whether sprouted grain was the Product's sole or primary ingredient, or whether sprouted grain is more nutritious than non-sprouted grain. Plaintiffs' allegation that the Product's name, standing alone, is deceptive because it led Plaintiffs

and other consumers to believe the Product contained even *more* sprouted grain than what appears on the ingredient list is implausible.

The allegations in the complaint also demonstrate that Plaintiffs could not have suffered any damages stemming from the purported deception. On the face of the complaint, the Product is identified to have the *identical price* as all other bagels offered by Starbucks at that time—including, but not limited to, the plain bagel. Plaintiffs therefore cannot plausibly allege that they paid a premium, lost money, or suffered any other injury as a result of buying the Product over the other bagels offered for sale.

Because the pleading deficiencies are fatal to all of Plaintiffs' claims, Starbucks respectfully moves to dismiss all of Plaintiffs' claims, with prejudice, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Motion"). Alternatively, Starbucks moves to strike the improper allegations concerning the putative nationwide class, which also fail as a matter of law.

## II.    ALLEGATIONS IN PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs allege that Starbucks "is a Washington corporation with its principal place of business in Seattle," which "owns and operates one of the world's largest coffee and beverage chains." (ECF No. 1 ¶ 10.) Plaintiffs further allege that Starbucks "sell[s] coffee, tea, pastries, and other breakfast items" with "over 15,000 brick and mortar stores in the [United States] alone." (*Id.* ¶¶ 10–11.) Plaintiff Schleyer, who is a citizen of New York, and Plaintiff Mishkan, who is a citizen of California, both allege that they purchased the Product in their respective states. (*Id.* ¶¶ 8–9.)

Plaintiffs allege that Starbucks offers the Product, the Sprouted Grain bagel, and that "Starbucks has resorted to false and deceptive advertising to boost sales and increase profits from the Product" by "market[ing] the Product with in-store advertising claiming that the Product is a 'Sprouted Grain' bagel," as shown below:



(*Id.* ¶¶ 13–14.)   In other words, it is the name of the bagel that is allegedly misleading.   The "marketing" and "in-store advertising" relied upon is a small card listing the various types of bagels available for purchase.   (*Id.*)   The name of the Sprouted Grain bagel appears alongside the names of other bagels, such as cinnamon raisin, everything, and plain.

According to Plaintiffs, the Product is deceptively named because it is "made primarily with traditional, non-sprouted grains" and reasonable consumers would believe that a product named "Sprouted Grain" bagel would have sprouted grains "as the sole or at least primary source of grain in the Product."   (*Id.* ¶¶ 15–16.)   Plaintiffs acknowledge that the Product's ingredient list includes many types of "sprouted" grains (highlighted below), among other ingredients:

506413342.4

**ENRICHED WHEAT FLOUR** [WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID, ASCORBIC ACID (DOUGH CONDITIONER), ENZYMES], WATER, **SPROUTED WHOLE WHEAT FLOUR**, GRAIN BLEND [WHEAT SOURDOUGH (WATER, FERMENTED WHEAT FLOUR), SPROUTED WHEAT GRAINS, SPROUTED RYE GRAINS, SPROUTED TRITICALE GRAINS], SEEDS AND GRAINS BLEND [OATS, BROWN FLAX, GOLDEN FLAX, SUNFLOWER SEEDS, WHEAT], LIQUID SUGAR, MALTED BARLEY FLOUR, CONTAINS 2% OR LESS OF: SUNFLOWER SEEDS, FLAX SEEDS, WHEAT GLUTEN, SOYBEAN AND/OR CANOLA OILS, SALT, YEAST, CORNMEAL, WHEAT FLOUR, ENZYMES. CONTAINS: WHEAT.

(*Id.* ¶ 17.)  Despite the admitted inclusion of sprouted whole-wheat flour as the third ingredient, and a grain blend containing multiple sprouted grains as the fourth ingredient, Plaintiffs allege that "the advertising of the Product as 'Sprouted Grain'" is "false and deceptive."  (*Id.* ¶ 18.)

Plaintiffs also allege that the Product's name is "material to consumers['] purchasing decisions because sprouted grains are more premium and desirable than traditional non-sprouted grains."  (*Id.* ¶ 19.)  That is, the Product's name suggests that "sprouted grains" offer superior nutritional benefits, including having "less starch, a lower carb count, easier . . . digest[ion]," "a lower glycemic index," and "more key nutrients."  (*Id.*)  Plaintiffs contrast the alleged benefits of sprouted grains with those of "processed white flour," which they claim Starbucks "primarily uses in the Product."  (*Id.*)  However, this allegation is plainly contradicted by the ingredient list, which establishes that the Product does not contain *any* white flour.  (*Compare* ECF No. 1 ¶ 19, *with* ¶ 17.)  Plaintiffs further allege that their belief that a product described as a "sprouted grain" bagel must have sprouted grains as the sole or primary source of grain is reasonable because there are

packaged sprouted bread products available in grocery stores that contain sprouted grain as the first or second ingredient on the label.  (*See id.* ¶¶ 20–22.)

Finally, Plaintiffs allege that "[h]ad [they] known that Product [sic] was made primarily with traditional, non-sprouted grains, [they] would not have purchased it, or would have paid significantly less for it"; as such, they have "lost money" and "been injured." (*Id.* ¶¶ 8–9, 24–25.) Plaintiffs acknowledge that Starbucks charged the same price for the Product as it did for other non-sprouted grain bagels.  (*Id.* ¶ 14.)

Plaintiffs bring this class action on behalf of themselves and on behalf of putative nationwide, California, and New York classes.  (*Id.* ¶ 26.)  They assert the following seven claims: (1) violation of New York General Business Law § 349; (2) violation of New York General Business Law § 350; (3) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200 *et seq.*; (6) breach of implied warranty under Cal. Com. Code § 2314 and N.Y. U.C.C. § 2-314(1); and (7) common law claims for quasi contract, unjust enrichment, and restitution.  (*Id.* ¶¶ 35–88.)

## III.   ARGUMENT

### A.    Rule 12(b)(6) Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At a minimum, a plaintiff must allege facts showing "more

than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (finding *Twombly* instituted a "plausibility standard," requiring a complaint to "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which *actively and plausibly* suggest that conclusion") (emphasis added)).

Further, a court need not credit a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). Likewise, when the allegations of a complaint are "materially inconsistent" with the evidence that a plaintiff relies on to make those allegations, a court may conclude that the plaintiffs' claims cannot survive a motion to dismiss. *See, e.g.*, *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

**B.      Plaintiffs Fail to Plausibly Plead Claims under New York Law.**

**1.      The claims brought under New York General Business Law §§ 349 and 350 fail as a matter of law.**

Plaintiffs fail to plausibly state a claim under §§ 349 and 350 because the complaint fails to allege facts establishing the necessary elements.  Sections 349 and 350 of the New York General Business Law make it unlawful to engage in "[d]eceptive acts or practices" or "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in" New York.  *See* N.Y. Gen. Bus. Law §§ 349(a), 350.  "To successfully assert a claim under either section, 'a plaintiff must plausibly allege that the defendant's act or practice constitutes (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 952 (2012)).

Here, Plaintiffs' allegations of the purported deception—i.e., naming the Product the

Sprouted Grain bagel—are insufficient to show that a reasonable consumer would be misled to believe that sprouted grains are the sole or primary grain contained in the Product. Plaintiffs also have not plausibly alleged that they suffered injuries stemming from any purported deception by Starbucks.

> ### i. The allegations are insufficient to show that a reasonable consumer would be materially misled by the name "Sprouted Grain bagel."

To determine whether a defendant's act or practice is "materially misleading," New York courts have "adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander*, 802 F.3d at 300 (internal citations omitted); *see Oswego Laborers' Loc. 214 Pen. Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (adopting "an objective definition of deceptive acts and practices," which is "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances"). "In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citation omitted) (alterations adopted). Accordingly, courts must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Id.*; *see also Fink*, 714 F.3d at 740–41 (recognizing that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception").

Courts in this District, including this Court, "have dismissed claims where '[n]othing in the label states or implies that the [product's] flavor is derived entirely from [the ingredient at issue]." *Wallace v. Wise Foods, Inc.*, No. 20-cv-6831-JPO, 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021); *see, e.g.*, *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 242 (S.D.N.Y. 2021) (same, concluding "[p]laintiffs' allegations that reasonable consumers would expect the [p]roduct 'to be flavored *exclusively* with real vanilla are conclusory statements that the Court is

not required to accept") (citation omitted); *Brown v. Kellogg Sales Co.*, No. 20-cv-7283-ALC, 2022 WL 992627, at *4 (S.D.N.Y. Mar. 31, 2022) (same, concluding "[n]o reasonable consumer would read the product's label," "Frosted Strawberry Pop-Tarts," and "reasonably expect that fresh strawberries would be the sole ingredient in the [p]roduct").

> a.   *Plaintiffs concede that the Product contains at least four sprouted grain ingredients and therefore cannot be misleading as a matter of law.*

Plaintiffs concede that the Product contains not just one, but *several* "sprouted grain" ingredients: Sprouted Whole Wheat Flour (which is the third ingredient) and Sprouted Wheat Grains, Sprouted Rye Grains, and Sprouted Triticale Grains (all of which are part of the fourth ingredient, the Grain Blend).[1]  (ECF No. 1 ¶ 17.)  The Product's name cannot be misleading or deceptive, as a matter of law, because the Product indisputably contains multiple sprouted grain ingredients.  *See Kennedy v. Mondélez Glob. LLC*, No. 19-cv-302, 2020 WL 4006197, at *10–11 (E.D.N.Y. July 10, 2020) (concluding that the products, which use the term "graham" in the product title, are not "misleading or deceptive" because "they indisputably contain graham flour").

The use of "Sprouted Grain" in the Product's name is a reference to the type of bagel, not its "sole" or "primary" ingredients.  This is demonstrated by the incontrovertible fact that the Product is sold alongside other bagels that are also named after the type of bagel—such as the cinnamon raisin, everything, and plain bagels.  (ECF No. 1 ¶ 14); *see Mantikas*, 910 F.3d at 636 (explaining that "context is crucial" to "determin[e] whether a reasonable consumer would have been misled by a particular advertisement").  With respect to those other Starbucks bagels, consumers will reasonably expect that they contain at least some of those ingredients—that, for

---

[1] Under 21 C.F.R. § 101.4(a)(1), ingredients are generally required to be listed "in descending order of predominance by weight."

-8-

example, the cinnamon raisin bagel contains cinnamon and raisins, the everything bagel contains various seasonings, and the plain bagel will not have significant modifying ingredients.  However, no reasonable consumer would expect that those bagels are *solely* or *primarily composed of* cinnamon, raisins, or seasoning (or nothing), or that those ingredients will show up first or second on the bagel's ingredient list.  Plaintiffs do not (and cannot) allege otherwise.

Here, the same logic applies.  There is simply no basis for Plaintiffs' assertion that naming the Product based on its sprouted grain ingredients would lead a reasonable consumer to expect that sprouted grains are the "sole" or "primary" ingredient in the bagel (i.e., its first or second ingredient).  *See Dashnau*, 529 F. Supp. 3d at 245–46 (dismissing §§ 349 and 350 claims on the ground that "nothing . . . suggest[ed] that vanilla beans are the *only* source of vanilla flavoring"); *Wallace*, 2021 WL 3163599, at *2 (same, with respect to a product's "cheddar and sour cream" descriptor).  Naming the Product based on its sprouted grain ingredients makes no representations whatsoever about the specific amount of sprouted grain in the bagel.

To the extent that Plaintiffs argue the Product's name "may create confusion" as to the precise amount of sprouted grain contained in the Product (relative to non-sprouted grains), "such confusion is sufficiently dispelled by the ingredients [list]," which Plaintiffs expressly rely on in the complaint.  *See Wallace*, 2021 WL 3163599, at *2 (internal quotation marks and citation omitted).  The Second Circuit expressly instructs courts to consider the defendant's representations as a "whole, including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636; *see, e.g.*, *Boswell v. Bimbo Bakeries, USA, Inc.*, No. 20-cv-8923-JMF, 2021 WL 5144552, at *3 (S.D.N.Y. Nov. 4, 2021) (concluding "consumers would need additional information to understand the meaning of 'All Butter' and 'would know exactly where to look to investigate—the ingredient list'") (citations omitted).  If Plaintiffs had any doubt regarding the amount of sprouted grain in

the Product, the Product's ingredient list clarifies that at least four different sprouted grain

ingredients are contained in the Product in various quantities, making it clear that the Product does

in fact contain sprouted grain.  (*See* ECF No. 1 ¶ 17.)

Plaintiffs' assertion that the Product's "Sprouted Grain" name is materially misleading

fails as a matter of law because it contradicts the indisputable facts alleged in the complaint: that

the Product actually contains several sprouted grain ingredients and that its name is based on those

ingredients.

> b.   *Nothing in the complaint suggests Starbucks made any representations about the amount of sprouted grain in the Product or its nutritional benefits.*

In addition, notably absent from the complaint are allegations that Starbucks made any

affirmative representations about the proportion of sprouted grains in the Product's ingredients.  In

the absence of such representations, courts routinely dismiss claims that consumers were deceived.

*See, e.g.*, *Dashnau*, 529 F. Supp. 3d at 245–46 (dismissing §§ 349 and 350 claims on the ground

that "there is nothing to suggest that vanilla beans are the *only* source of vanilla flavoring" or "that

the flavor from vanilla beans constitutes a certain percentage of the total vanilla flavor"); *see also*

*Wallace*, 2021 WL 3163599, at *2 ("Nothing in the label states or implies that the chips' flavor is

derived entirely from cheddar and sour cream.").

Typically, courts "find misleading representations about ingredients when the product label

*explicitly* asserts that it is *made with a specific ingredient* (when it is not) or *specifies the quantity*

of an ingredient when the ingredient is not predominant in the Product."  *Brown*, 2022 WL 992627,

at *4 (emphasis added); *e.g.*, *Mantikas*, 910 F.3d at 633, 638–39 (representing product was "Made

with Whole Grain" in large print with "Made with 8G of Whole Grain Per Serving" in smaller

print).  In this case, these types of misleading representations are altogether lacking, warranting

the dismissal of Plaintiffs' claims.  *See, e.g.*, *Kennedy*, 2020 WL 4006197, at *11 (concluding that

-10-

the §§ 349 and 350 claims, "based on the terms 'grahams,' 'graham crackers,' and '8g of whole grain per 31g serving,' be dismissed as not misleading or deceptive" because such terms do "not necessarily constitute a representation about the quantum of graham flour in the product" or that "an ingredient is the primary or predominant ingredient"); *see also Hamidani v. Bimbo Bakehouse LLC*, No. 22-cv-1026, 2023 WL 167513, at *3 (N.D. Ill. Jan. 12, 2023) (concluding "the [b]read's appearance and label ma[de] no explicit or implicit representations about the proportion of whole grains in the [b]read's ingredients").

Similarly, there are no allegations that Starbucks touted the relative nutritional benefits of sprouted grains. *See Solak v. Hain Celestial Grp., Inc.*, No. 17-cv-0704-LEK-DEP, 2018 WL 1870474, at *7 (N.D.N.Y. Apr. 17, 2018) (emphasizing that defendants "ma[d]e no explicit claims as to the objective or relative nutritional value of the [product] whatsoever"). Yet, Plaintiffs nevertheless assert, in a conclusory fashion, that using "Sprouted Grain" in the Product's name somehow leads a reasonable consumer to believe that the Product contains "less starch" and "a lower carb count"; is "easier to digest"; has "a lower glycemic index than regular grains"; "produces more key nutrients, including protein, fiber, and vitamins"; and "breaks down phytic acid, which normally decreases absorption of vitamins and minerals in the body." (ECF No. 1 ¶ 19.) Plaintiffs' unsupported assertions that the name "Sprouted Grain bagel" connotes all of these nutritional benefits are insufficient to support Plaintiffs' position.

      c.     *Plaintiffs' reference to "sprouted" bagels sold in grocery stores only demonstrates the implausibility of their false-labeling theory.*

Plaintiffs' reliance on other "sprouted grain" products on the market is also unavailing. (*See* ECF No. 1 ¶¶ 20–22.) [T]hat a similar product contains more or less of an ingredient . . . does not establish deception." *Kennedy*, 2020 WL 4006197, at *10. Nevertheless, Plaintiffs take issue with the fact that sprouted whole wheat flour shows up *third* on the Product's ingredient list, *see*

*id.* ¶ 17, while some bagels sold in grocery stores list sprouted whole wheat flour as the *first* (or *second*) ingredient. (*See id.* ¶¶ 20–22.) Plaintiffs, however, have not plausibly alleged that listing an ingredient third (as opposed to first or second) justifies the conclusion that it is misleading to name the Product a "Sprouted Grain" bagel. This is particularly true here, given that the other "sprouted" bagels referenced in the complaint contain both sprouted wheat flour *and non-sprouted* wheat flour in the top three ingredients (in addition to water)—just like the Product at issue. (*Compare* ECF No. ¶ 17, *with id.* ¶¶ 20, 21, 22.)

Plaintiffs also fail to acknowledge that these other products are likewise susceptible to Plaintiffs' novel false-labeling theory. For example, each of these other products make specific representations that their bagels are "*made with* organic sprouted whole wheat" or "50+% Whole Grain" even though they also contain non-sprouted wheat flour. (*See id.* ¶ 21 n.2 & ¶ 22 n.3.)[2] At least one of these products represents that "sprouting" grain "unlocks whole grains to deliver [h]igher levels of nutrients," "[e]asier digestion," and "[b]etter absorption." (*Id.* ¶ 20 n.1.) Starbucks makes none of these representations.

Similarly, one product cited in the complaint labels itself as a "Sesame Seed" bagel in large font, with a "sprouted wheat" representation in smaller font; but sprouted wheat berries are listed as the first ingredient, and sesame seeds are listed as the *fifth* ingredient. (*Id.* ¶ 21.) Under Plaintiffs' logic, this product's label would also be "materially misleading" because it references ingredients that are not the "sole" or "primarily" ingredients (i.e., not the first or second

___

[2] The Court may take judicial notice of these facts, which are incorporated by reference in the complaint and "can be accurately and readily determined," without converting this Motion into one for summary judgment. *See* Fed. R. Evid. 201(b)(1); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

ingredient).  Plaintiffs' reliance on other sprouted-grain bagels on the market simply does not save their complaint.

> d.    *Plaintiffs fail to allege that any empirical evidence substantiates their assertions that the "Sprouted Grain" name is materially misleading.*

Finally, Plaintiffs provide no empirical basis for their assertion that the Product's name would be materially misleading to reasonable consumers.  Courts have dismissed §§ 349 and 350 claims when a plaintiff fails to allege facts that substantiate an assertion that a particular representation would be materially misleading.  *See, e.g.*, *Dashnau*, 529 F. Supp. 3d at 242 (dismissing §§ 349 and 350 claims in part because plaintiffs "provide[d] no empirical basis to substantiate their assertion that reasonable consumers would interpret the [p]roduct's label to imply an exclusive source of vanilla flavoring").  Likewise here, Plaintiffs have not alleged any facts or objective evidence to justify their claim that the Product's name would mislead reasonable consumers to believe that the Product contains even more sprouted grain than it does, or that the Product has superior nutritional qualities, relative to non-sprouted bagels.  The Court therefore need not credit Plaintiffs' unsupported assertions.  *See id.*; *see also Iqbal*, 556 U.S. at 678.

In short, Plaintiffs do not plausibly allege that the use of "Sprouted Grain" in the Product's name suggests that it contains even more sprouted grain than what it allegedly contains—i.e., a sprouted grain ingredient as the first or second ingredient, as opposed to the third *and* fourth ingredients.  (*See* ECF No. 1 ¶ 17.)  Because the complaint contains only threadbare legal conclusions that using "Sprouted Grains" in the Product's name could lead a reasonable consumer to believe that the Product contained even more sprouted grain than it did (or that the Product was healthier than non-sprouted grain bagels), Plaintiffs fail to adequately plead the "materially misleading" element of claims brought under New York General Business Law §§ 349 and 350. These claims should be dismissed as a matter of law.

###### ii.      *The allegations are insufficient to show that Plaintiffs suffered any damages from the purported deception by Starbucks.*

Plaintiffs have also failed to allege facts establishing that they have suffered any damages. To plausibly allege "actual injury" under §§ 349 and 350, a plaintiff must "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302; *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999) (concluding plaintiffs must "present a legally cognizable injury" to adequately plead a § 349 claim); *see also Oswego Laborers' Loc. 214 Pen. Fund*, 85 N.Y.2d at 26 (same). Plaintiffs attempt to satisfy this requirement with threadbare allegations that they would not have purchased the Product or would have paid less for it had they known sprouted grains were not the first or second ingredient. (*See* ECF No. 1 ¶ 24.) These allegations are insufficient to adequately plead "a legally cognizable injury."

First, an allegation that a plaintiff would not have purchased a product absent an allegedly deceptive act is insufficient to plead a cognizable injury. *See, e.g.*, *Small*, 94 N.Y.2d at 57. New York courts have rejected plaintiffs' damages claims based on the purchase price alone, i.e., that they bought "a product that they would not have purchased, absent a [defendant's] deceptive commercial practice." *Id.* (explaining that plaintiffs "chose . . . to confine the relief sought solely to monetary recoupment of the purchase price of the [product]," but concluding that the damages theory was "legally flawed" because it "contain[ed] no manifestation of either pecuniary or 'actual' harm"); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697-CM, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (concluding that the plaintiffs' assertion of injury, "that consumers . . . [bought] a product that they would not have purchased" was already rejected by the Court of Appeals in *Small*); *Braynina v. TJX Cos., Inc.*, No. 15-cv-5897-KPF, 2016 WL 5374134, at *9–10 (S.D.N.Y. Sep. 26, 2016) (same).

-14-

Apparently recognizing the futility of that damages theory, Plaintiffs alternatively allege that they "would have paid significantly less" for the Product and "lost money as a result of false and deceptive practices." (ECF No. 1 ¶¶ 24–25.) But other facts alleged in the complaint contradict that allegation. For example, Plaintiffs allege that the Product was the *identical price* ($1.85 per bagel) as every other non-sprouted bagel offered by Starbucks, including, for example, the non-sprouted plain bagel. (*Id.* ¶ 14.) That is, Plaintiffs would have paid the same price for the Product regardless of how much sprouted grain was contained in it. "Simply because Plaintiffs . . . recite the word 'premium' multiple times in their complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo*, 2016 WL 6459832, at *7 (dismissing a § 349 claim under Rule 12(b)(6) for failure to plausibly allege that plaintiffs "paid a *higher* price for the [product] than they otherwise would have, absent deceptive acts").

Plaintiffs' failure to plead a cognizable damages theory offers alternative grounds for dismissing their §§ 349 and 350 claims.

### 2.    The remaining New York claims, a statutory claim for breach of implied warranty and other common law claims, also fail as a matter of law.

Because Plaintiffs have failed to plausibly allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer, all of Plaintiffs' other claims brought under New York law—a claim for breach of implied warranty under N.Y. U.C.C. § 2-314(1) and a claim for quasi contract, unjust enrichment, and/or restitution under New York common law must also be dismissed. *See Dashnau*, 529 F. Supp. 3d at 247 (dismissing with prejudice a plaintiff's claims under New York common law for breach of implied warranty of merchantability and unjust enrichment, among other claims, for failure to adequately plead that the challenged representations were materially misleading under §§ 349 and 350) (citation omitted); *Brown*, 2022 WL 992627, at *6 (same).

Moreover, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91 (2012); *see also* 22A N.Y. Jr. 2d Contracts § 515 (explaining restitution "is the remedy for unjust enrichment, and is not a separate basis for liability," while quasi contract is "merely a legal obligation imposed to prevent a party's unjust enrichment"). Accordingly, all of Plaintiffs' remaining claims brought under New York law fail for the reasons stated in Section III(B)(1) above.

**C.      Plaintiffs Fail to Plausibly Plead Claims under California Law.**

**1.      The CLRA, FAL, and UCL claims fail as a matter of law for failure to sufficiently plead that a reasonable consumer is likely to be deceived by any purported deception by Starbucks.**

Plaintiffs' claims brought under California law, namely the CLRA, FAL, and UCL claims, also fail as a matter of law. Similar to New York's consumer protection statutes, both the FAL and certain provisions of the CLRA prohibit "untrue and misleading" advertising, as well as misrepresenting a product's characteristics. *See* Cal. Bus. & Prof. Code § 17500 (FAL); Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9) (CLRA). Likewise, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive untrue or misleading advertising," including any underlying FAL violation. *See* Cal. Bus. & Prof. Code § 17200. In other words, the UCL "'borrows' violations of other laws and treats them as unlawful practices that" are "independently actionable" under the UCL. *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540–41 (Cal. 1999).

To plausibly allege that a consumer is "likely to be deceived" in violation of the FAL, CLRA, or UCL, California courts—like New York courts—adopt a reasonable person standard. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (applying California law and concluding that "by explicitly imposing a 'reasonable care' standard on advertisers, [the FAL]

-16-

implicitly adopts such a standard for consumers as well") (citation omitted) (alterations adopted). Moreover, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003). "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 46 (Cal. Ct. App. 2006) ("The standards for determining whether a representation is misleading under the [FAL] apply equally to claims under the CLRA.").

When a plaintiff fails to plausibly allege that a reasonable consumer could be misled by the product, federal courts applying California law routinely dismiss FAL, CLRA, ad UCL claims without leave to amend. *See, e.g.*, *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015) (dismissing CLRA and UCL claims because placing images on the product label was not an "affirmative misrepresentation" and could not lead a reasonable consumer to believe the flavors pictured on the label "directly correlate with the predominance of the pictured ingredient"); *Werbel ex rel. v. Pepsico, Inc.*, No. No. C09-04456-SBA, 2010 WL 2673860, at *3, 6 (N.D. Cal. July 2, 2010) (same, concluding that plaintiffs' assertion that the public is likely to be deceived that "Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries'" or the shape of the cereal "to resemble berries" was "[n]onsense"); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) (affirming dismissal of CLRA and UCL claims where allegations failed to sufficiently allege reasonable consumers would read the word "diet" in a soft drink's brand name to promise weight loss, healthy weight management, or other health benefits).

Here, too, the allegations do not plausibly demonstrate that the Product's "Sprouted Grain"

name is false or likely to deceive "a significant portion of the general consuming public"—as extensively discussed in Section III(B)(1)(i) above. *Lavie*, 129 Cal. Rptr. 2d at 495; *see, e.g.*, *Martinez v. Mead Johnson & Co., LLC*, No. 22-cv-213-JWH-SHK, 2022 WL 15053334, at *5 (C.D. Cal. Oct. 22, 2022) (rejecting a plaintiff's reliance on a "'Milk-based label' to expect that milk was the primary ingredient by weight" as "only one person's rather narrow interpretation"). For example, Plaintiffs do not allege that Starbucks made "a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Parent v. MillerCoors LLC*, No. 15-cv-1204-GPC-WVG, 2015 WL 6455752, at *8 (S.D. Cal. Oct. 26, 2015) (even assuming there was a "legal or controlling definition of a 'craft beer,' the court concluded the plaintiff could not rely on such a definition for the argument "that the phrase 'Artfully Crafted' is misleading"). Plaintiffs simply have not plausibly alleged that using "Sprouted Grain" in the Product's name, standing alone, suggests to most reasonable consumers that the product is made "solely" or "primarily" of sprouted wheat flour or some other sprouted grain ingredient. *See Martinez*, 2022 WL 15053334, at *5 (plaintiffs must allege "factual support for why a reasonable consumer would narrowly interpret a ***something***-based label to mean that ***that something*** must contribute the most to the product's weight") (emphasis in original).

Plaintiffs' anticipated reliance on the fact that sprouted grain was the third ingredient, but not the first or second, is also unavailing. *See Martinez*, 2022 WL 15053334, at *6 (consumers reading the ingredient list "would see that milk ***is*** an ingredient, even though it is not the first ingredient listed") (emphasis in original). This is particularly true here, given that the other sprouted grain products cited in the complaint *all* contained non-sprouted wheat flour and water (alongside a sprouted grain ingredient) in the top three ingredients (just like the Product). (*See* ECF No. 1 ¶¶ 17, 20–22.) Yet, those other products nevertheless made specific representations

that they were "made with" sprouted grain or touted sprouted grains' superior nutritional benefits. *See supra*, Section III(B)(1)(i)(c); *see, e.g.*, *Cruz v. Anheuser-Busch, LLC*, No. 14-6760-AB, 2015 WL 3561536, at *8 (C.D. Cal. June 3, 2015) (dismissing FAL, CLRA, and UCL claims in part because plaintiffs' "comparisons are to other margarita products" were "not a fair comparison").

On these allegations, Plaintiffs cannot plausibly assert that the Product's name is false or likely to deceive a significant portion of the general consuming public.

### 2. The remaining California claims, a statutory claim for breach of implied warranty and other common law claims, also fail as a matter of law.

Plaintiffs' remaining claims brought under California law likewise fail as a matter of law. With respect to the claim for breach of implied warranty under California Commercial Code § 2314, that provision "does not impose a general requirement that goods precisely fulfill the expectation of the buyer," but rather requires only a "minimum level of quality." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (quoting *Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975)). Notably here, Plaintiffs' complaint does *not* allege that the Product lacks "even the most basic degree of fitness for ordinary use," nor do they "allege that the [Product] is not suitable for use as a [bagel]." *Id.* In *Viggiano*, the court dismissed the § 2314 claims on the ground that the plaintiff did "not allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink," that the soda "was not drinkable, that it was contaminated or contained foreign objects." *Id.* Similarly here, Plaintiffs' threadbare legal assertion that the Product is not "merchantable" because it "contain[s] primarily traditional non-sprouted grain" is simply insufficient to state a claim for relief under § 2314. (*See* ECF No. 1 ¶ 80.)

California law is also clear that "[t]he right to restitution or quasi-contract recovery is based upon unjust enrichment" and "[t]here is no separate cause of action in California for unjust enrichment," which is "synonymous with restitution." 1 Witken, Summary 11th, Contracts § 1050

-19-

(2017) (citing *Levine v. Blue Shield of Cal.*, 117 Cal. Rptr. 3d 262, 278–79 (Cal. Ct. App. 2010)). "As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract." *See Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010). Even in the absence of an enforceable contract, a defendant "is required to make restitution only if the circumstances are such that . . . it is *unjust* for the person to retain it." *Id.* (emphasis in original).

Here, there is no basis to award restitution because Plaintiffs allege that the parties' relationship is governed by an implied contract, *see* ECF No. 1 ¶¶ 75–82, rendering unjust enrichment or an award of restitution inapplicable. *See Durell*, 108 Cal. Rptr. 3d at 699. Even assuming that Plaintiffs may simultaneously pursue restitution in the alternative, Plaintiffs have failed to plausibly allege that they "paid in excess of reasonable value for the [Product] [they] received." *Id.* at 699–700; *see supra*, Section III(B)(1)(ii). Accordingly, Plaintiffs' remaining claims brought under California law should also be dismissed for failure to state a claim.

## D.    Leave to Amend Would Be Futile.

Any attempt by Plaintiffs to cure the complaint's many deficiencies would be futile. Although a "court should freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court does not abuse its discretion when a plaintiff fails to "offer[] any pleading that would cure the deficiencies in the extant complaint," leading to the inevitable conclusion that "repleading would be futile." *Port Dock & Stone*, 507 F.3d at 127 (citing *Cuoco v. Mortisugo*, 222 F.3d 99, 112 (2d Cir. 2000)).

In this case, the necessary amendments would require Plaintiffs to replead facts that would inevitably contradict the facts already alleged in the complaint, as well as publicly available information. *See* Fed. R. Evid. 201(b). For example, the complaint alleges that the Product was

made with at least *four* sprouted grain ingredients, which appear as the third and fourth most prominent ingredients by weight.  (*See* ECF No. 1 ¶ 17.)   The complaint also indicates that Starbucks names bagels based on their ingredients, but not necessarily the sole or primary ingredients.  (*Id.* ¶ 14.)   These alleged facts, on their face, undercut Plaintiffs' assertion that a reasonable consumer would believe that, based on the Product's name alone, "the Product is made primarily with traditional, non-sprouted grain."  (*Id.* ¶¶ 1–3, 18–19); *see also* Sections III(B)(1)(i), (C)(1) above.  The only way to cure this pleading deficiency would require Plaintiffs to falsely allege that the Product did *not* contain these sprouted grain ingredients.  *See Fink*, 714 F.3d at 742 (affirming motion to dismiss because the allegations were "materially inconsistent" with the sole advertisement [p]laintiffs ha[d] submitted").

Similarly, the complaint alleges that the price of the Product and the "Plain" bagel (and every other bagel then sold by Starbucks) was $1.85—meaning, the Product was the *identical price* as the other bagels, regardless of whether it contained sprouted grains or not.  (*See* ECF No. 1 ¶ 14.)   For the reasons discussed in Section III(B)(1)(ii), these factual allegations foreclose Plaintiffs' argument that they "and other consumers would have paid significantly less for the Product . . . had they known that" the Product contained sprouted and non-sprouted grains.  (*Id.* ¶¶ 24–25.)  Because the only way to remedy this deficiency would require Plaintiffs to falsely allege that they actually paid *more* than $1.85 for the Product, repleading would be futile.

Based on the complaint's undisputed allegations regarding the Product's ingredient list and price, granting leave to amend the complaint would require Plaintiffs to replead facts that would only contradict publicly available information alleged in the instant complaint.  The Court should deny any request to amend the complaint as futile.

**E.      Alternatively, the Court Should Strike Plaintiffs' Nationwide Class Allegations.**

Starbucks alternatively moves to strike Plaintiffs' nationwide class allegations, which fail as a matter of law.  Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Rule 23(d) similarly provides that the Court may "require that the pleadings be amended to eliminate allegations about representations of absent persons."  Fed. R. Civ. P. 23(d)(1)(D).  Rule 23(c) further provides that the Court may rule on such issues "[a]t an early practicable time after a person sues . . . as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

"The class action is 'an exception to the rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted).  Accordingly, "when a claim cannot succeed as a matter of law, the Court should not certify a class on the issue." *McLaughlin v. Am. Tobacco Corp.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) (citation omitted).  "[O]nce it becomes clear that the plaintiffs cannot possibly prove the" challenged nationwide class allegations, the "[C]ourt may order deletion of portions of a complaint's class claims." *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 6-cv-6198-LAK-JCF, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (quoting 5 Moore's Fed. Prac. § 23-145 (3d ed. 2007)).  "[E]ither a plaintiff or a defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)," because "sometimes it may be necessary for the [C]ourt to probe behind the pleadings before coming to rest on the certification question." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (citations omitted).

In this case, it will be necessary for the Court to "probe behind the pleadings" before entertaining any motion for certification for at least three reasons.

First, the adjudication of Plaintiffs' common law claims[3] is not practicable, as it would necessarily require the application of 48 other states' laws, in addition to New York and California law.  Moreover, Plaintiffs attempt to certify a nationwide class asserting an unjust enrichment claim, the elements of which "vary materially from state to state."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591–92 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) (vacating district court's decision to certify nationwide class, concluding it was inappropriate because of differences amongst various state consumer protection and unjust enrichment laws); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (concluding because state consumer laws "vary considerably" and "a single nationwide class is not manageable," the district court improperly certified nationwide class in consumer protection action).  Even if "more than a few of the laws of the fifty states differ," this Court "would face an impossible task of instructing a jury on the relevant law."  *Pilgrim*, 660 F.3d at 948.  Indeed, even *before* this Court reaches the merits of Plaintiffs' and other class members' unjust enrichment claim, "New York's conflicts jurisprudence demands that the Court apply the law of the state wherein each [class member] purchased the [Product]," which would inevitably require this Court to apply *50 states'* "significant contacts tests . . . to [class members'] claims for . . . unjust enrichment."  *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149, 161 (S.D.N.Y. 2008) (decertifying class based on the "potentially particularized issues" concerning the unjust enrichment claim and any "unclean hands" defense).

---

[3] The only claim Plaintiffs bring on behalf of the nationwide class is the seventh claim for relief: the claims for quasi contract, unjust enrichment, and/or restitution.  (*See* ECF No. 1 ¶¶ 83–88.)

Second, certain states altogether *prohibit* class actions that assert "unfair or deceptive" trade practices under state statute or common law.  *See, e.g.*, La. Rev. Stat. § 51:1409(A) (providing a claim for "unfair or deceptive method, act, or practice . . . may bring an action individually *but not in a representative capacity*") (emphasis added); Ga. Code Ann. § 10-1-399(a) (same, for consumer protection violations); Ala. Code § 8-19-10(f) (same, for consumer protection violations); Miss. Code Ann. § 75-24-15(4) ("Nothing in this [statute] shall be construed to permit any class action or suit."); *see also* Va. Code Ann. § 59.1-204 (permitting only "individual action[s] for damages" for consumer protection violations).  Similarly, other states (e.g., Texas) require a showing that the individual plaintiff actually *relied* on the alleged false representation in consumer protection actions, while other states do not (e.g., California, New York).  *See, e.g.*, *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423 (Tex. App. 2005) (concluding although Texas does "not entirely preclude class actions in which reliance was an issue, . . . it did make such cases a near-impossibility"); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. at 161 (decertifying class in part because it was "plagued by individualized issues arising from the requirement, found in several state laws, that purchasers prove that they actually relied upon an alleged misrepresentation in order to state a claim for consumer fraud").[4]

Third, to the extent that Plaintiffs propose applying New York and California common law to the unjust enrichment claim (given that all of Plaintiffs' remaining claims are exclusively brought under those states' statutes)—New York and California law is presumptively inapplicable to any transactions that occurred outside of those states.  While both states have an interest in

---

[4] Although Plaintiffs assert only a common law, unjust enrichment claim on behalf of the nationwide class (and not statutory consumer protection violations), as Sections III(B)(2) and (C)(2) explain, common law and statutory consumer protection claims often sink or swim together.

applying its own laws to transactions within its borders, there is a "presumption . . . *against* the extraterritorial operation of New York [or California] law" as to the class members who purchased the Sprouted Grain bagel *outside* those states.  *See, e.g.*, *Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 735 (2012) (emphasis added); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 321 (2002) (New York consumer protection statutes apply *only* to transactions occurring within the state); *Mazza*, 666 F.3d at 593–94 (concluding the alleged wrongs "as to the foreign class members . . . took place in the various foreign states, not in California" and "[t]hese foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state[s]"); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1017 (N.D. Cal. 2014) (dismissing class members' warranty claims to the extent their purchases were made outside the state).  In short, each putative class member's claims should be governed by the consumer protection laws of the jurisdiction in which the transaction took place—*not* New York or California.

Accordingly, the Court should exercise its discretionary power to strike the nationwide class allegations (*see* ECF No. 1 ¶¶ 26, 84) as impertinent, non-cognizable, and not practicable; or otherwise require Plaintiffs to amend their complaint to eliminate the allegations concerning absent class members who purchased the Product outside of New York or California.  *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 23(d)(1)(D).

## IV.    CONCLUSION

For these reasons, Starbucks respectfully requests that the Court grant this Motion and dismiss all of Plaintiffs' claims, *with prejudice*, for failure to state a claim under either New York or California law.  To the extent that the Court denies this Motion in whole or in part, Starbucks alternatively requests that the Court strike the improper nationwide class allegations.

Dated:  Newark, New Jersey                    Respectfully submitted,
        February 28, 2023

                                              **K&L GATES LLP**

                              By:      s/ Loly G. Tor
                                       Loly G. Tor
                                       One Newark Center, 10th Fl.
                                       Newark, New Jersey 07102
                                       Tel: (973) 848-4026
                                       loly.tor@klgates.com

                                       Paul W. Sweeney, Jr.
                                       (admitted *pro hac vice*)
                                       10100 Santa Monica Blvd., 8th Fl.
                                       Los Angeles, California 90067
                                       Tel: (310) 552-5000
                                       paul.sweeney@klgates.com

                                       Pallavi Mehta Wahi
                                       (admitted *pro hac vice*)
                                       Shelby R. Stoner (admitted *pro hac vice*)
                                       925 Fourth Avenue, Ste. 2900
                                       Seattle, WA 98104
                                       Tel: (206) 623-7580
                                       pallavi.wahi@klgates.com
                                       shelby.stoner@klgates.com

                                       *Attorneys for Defendant*
                                       *Starbucks Corporation*